UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JONINA BROWN,

                                  Plaintiff,

                                  DECISION AND ORDER

            -vs-

                                  17-CV-6467-CJS

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

_____

**APPEARANCES**

| | |
|---|---|
| For the Plaintiff: | Jeanne Elizabeth Murray, Esq.<br>Kenneth R. Hiller, Esq.<br>Law Offices of Kenneth Hiller, PPLC<br>6000 North Bailey Avenue, Suite 1A<br>Amherst, NY 14226<br>716 564-3288 |
| For the Defendant: | Ariella Renee Zoltan, Esq.<br>Social Security Administration<br>Office of General Counsel<br>26 Federal Plaza, Room 3904<br>New York, NY 10278<br>212-264-2217 |
| | Dennis J. Canning, Esq.<br>Office of the General Counsel<br>Social Security Administration<br>601 E. 12th Street, Room 965<br>Kansas City, MO 64106<br>816-936-5830 |
| | Kathryn L. Smith, A.U.S.A. (*oral argument*)<br>United States Attorney's Office<br>100 State Street, Fifth Floor<br>Rochester, New York 14614<br>585-263-6760 |

## INTRODUCTION

**Siragusa, J.** Jonina Brown ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits. Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Court grants the Commissioner's motion and denies the Plaintiff's application.

## PROCEDURAL HISTORY

Plaintiff filed a claim for Title XVI supplemental security income benefits on October 1, 2013. She alleged her disability started on September 15, 2011. The Social Security Administration denied her claims on January 9, 2014, and she appeared before an Administrative Law Judge ("ALJ") for a hearing on December 15, 2015, at which a vocational expert also testified. Ida Comerford, Esq., represented Plaintiff at the hearing. The ALJ issued a decision on February 18, 2016, denying her benefits, which Plaintiff appealed. The Appeals Council denied her request for review on May 17, 2017, and Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) on May 17, 2017. The Court heard oral argument on June 14, 2018.

## THE ALJ'S DECISION

The ALJ analyzed Plaintiff's Title XVI claim via the five-step sequential analysis.[1] At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 1,

---

[1] Applying the Commissioner's five-step sequential evaluation for adjudicating disability claims, 20 C.F.R. §§ 404.1520, 416.920, the Social Security Administrative records show that Plaintiff did not meet the insured status requirements of the Act through February 26, 2015, therefore she did not qualify for a Title II claim of disability insurance. R. 316.

(continued)

2016. At step two, the ALJ determined that Plaintiff had the following severe impairments: Raynaud's phenomenon; chronic headaches; blindness in the right eye; depressive disorder, NOS[2]; mood disorder, NOS; psychotic disorder, NOS; paranoid schizophrenia; anxiety disorder; and posttraumatic stress disorder (PTSD). R. 160. However, at step three, the ALJ also determined that the impairments, neither singularly nor together, met or medically exceeded the severity of one of the Commissioner's listed impairments. R. 160–62.

Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels as defined in 20 C.F.R. § 416.967(b). Based on the medical evidence in the Record, he added the following non-exertional limitations:

> frequently finger bilaterally; avoid all exposure to extreme cold; occasionally perform tasks requiring depth perception and/or close hand-eye coordination; understand, remember, and carry out simple instructions and tasks; occasionally interact with co-workers and supervisors; little to no contact with the general public; able to work in a low stress work environment (*i.e.*, no supervisory duties, no dependent decision-making required, no strict production quotas, minimal changes in work routine and processes, *etc.*); and is able to consistently maintain concentration and focus for up to two hours at a time.

R. 162–67. The ALJ determined that Plaintiff possesses no past relevant work experience. R. 168.

At step five, considering her age, education, work experience, and RFC, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform, specifically: laundry worker, dining room attendant, and cleaner, housekeeping. R. 168. Accordingly, the ALJ found Plaintiff not disabled. R. 168–69.

---

[2] Not Otherwise Specified.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## ANALYSIS

Plaintiff argues that the ALJ's RFC is not based on substantial evidence and that the ALJ substituted his own lay opinions in determining her RFC. PL.'s Mem. of Law 19, Jan. 9, 2018, ECF No. 11-1. Plaintiff contends that the ALJ erred in weighing the opinions of her therapist, Ms. Jessica Tackaberry, did not properly develop the record regarding her disabilities, granted only some weight to consultative examiners (thereby creating a gap in the record), and substituted his own lay opinions in determining Plaintiff's RFC.

Plaintiff's RFC, both mentally and physically, is her "'maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis.'" *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). When making an RFC assessment, an ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue,* 631 F.Supp.2d 200, 210 (N.D.N.Y. 2009). "In determining the claimant's physical ability, or residual work capacity, the

[Commissioner] must consider objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant or others." *Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984).

### *Plaintiff's Subjective Complaints*

At the hearing, Plaintiff testified that she cannot be around people and preferred "to be by myself in a room with a door closed and very dim lights," R. 182, that she hears voices "pretty much every day," but since she "got the right medication,…they're not so bad," but that she "can't tune them out." R. 183. At home she does "a lot of cleaning up," listens to music, calls her mother, and "just picked up a new craft with Modge Podge….." R. 184. About twice a month, she is so depressed she cannot take a bath, even though she loves bathing. R. 184–85. During the hearing, her attorney pointed out that she was shaking and asked if it was due to her anxiety, to which she responded, "Yes," and stated that panic attacks are another symptom of her anxiety. R. 185–86. Her attorney asked her the following question to which she gave the following response:

> Q. So when you came here today, you had asked the guard for some accommodations? What was that?
>
> A. Yeah, I wanted to go in a quiet room like they have at mental health because a lot of people started coming up, going in the line. And I'm scared to ride an elevator by myself, so I couldn't go back down the stairs by myself because nobody was getting on the elevator.

R. 187–88. Plaintiff also testified about her Raynaud's diagnosis, stating, "I can have a flare at any time like it could be like 90 degrees outside and my fingers will get numb to the point where they're like glue and the hurt like they're frozen." R. 188. When that happens, she stated, she cannot pick up even a cup and the problem lasts from five to twelve minutes. *Id.*

*RFC Findings*

Plaintiff argues that the ALJ's RFC findings resulted from the "cherry-picking" of evidence and the improper substitution of his own lay opinion. Plaintiff contends that the ALJ did not properly weigh the medical opinions in the Record. The Court disagrees with both contentions.

The Court finds that the ALJ properly applied the Treating Physician Rule, which states "the opinion of a claimant's treating physician is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); 20 C.F.R § 416.927(c).[3] When a treating physician's opinion is not entitled to controlling weight or when the ALJ is evaluating an opinion from a non-treating or non-acceptable medical source, the ALJ considers the following factors: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors that tend to support or contradict the opinion. See 20 C.F.R. § 416.927(c)(1)–(6). The ALJ need not explicitly discuss each of those factors. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").

---

[3] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844; see also 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules apply only to claims filed on or after March 27, 2017. See 82 Fed. Reg. 5844. Therefore, they do not apply to the ALJ's decision in this case. The citations in this brief are to the regulations and rulings in effect at the time of the ALJ's decision.

It is the ALJ's responsibility to weigh all evidence and resolve conflicts in the evidence. *Richardson*, 402 U.S. at 399; *Aponte v. Sec'y of HHS*, 728 F.2d 588, 591 (2d Cir. 1984); *see Bethge v. Chater*, 896 F. Supp. 301, 317 (W.D.N.Y. 1995). When an opinion is unsupported or is inconsistent with other substantial evidence, the ALJ is not required to afford deference to it, and may use discretion in weighing the medical evidence as a whole. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

### *Jessica Sharp Tackaberry, MS, LMF*

Jessica Sharp Tackaberry completed a mental residual functional capacity questionnaire in which she indicated that she was "unable to speak regarding employability." R. 774. On November 19, 2013, she also completed a Monroe DHS Employability Assessment in which she stated that Plaintiff was moderately limited in the following: understanding and remembering simple instructions; maintaining attention and concentration for rote tasks; and regularly attending to a routine and maintaining a schedule R. 438–53. Nevertheless, she also determined that Plaintiff could perform simple and complex tasks independently; maintain basic standards of hygiene and grooming; and perform low stress and simple tasks R. 438–53. She made similar findings in a December 17, 2013, form, R. 445–46, and January 29, 2015, form, R. 452–53.

Ms. Tackaberry is a marriage and family therapist licensed in New York State.[4] Plaintiff and the Commissioner agree that the rules do not consider her to be an acceptable medical source. 20 C.F.R. § 416.902. Nevertheless, the rules, and a ruling, require that the ALJ evaluate her opinion. 20 C.F.R. § 416.927(c) ("Evaluating opinion evidence for claims filed before March

---

[4] Jessica Tackaberry, license number 000763, began practicing June 29, 2009 and her license expires in January of 2021. (Last checked online: June 10, 2019).

27, 2017"); SSR 06-3p ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment (s) and how it affects the individual's ability to function.").

Here, the ALJ received and reviewed records from Ms. Tackaberry which aided in forming his opinions. Plaintiff argues that the ALJ gave "arbitrary reasons for discounting the opinions that limited plaintiff in ways that did not match with his RFC determination." Pl.'s Mem. of Law 28, Jan. 9, 2018, ECF No. 11-1.The ALJ properly discounted Ms. Tackaberry's and Dr. Lin's opinions as unsupported by their records. Ms. Tackaberry noted that Plaintiff reported having a "strong, close group of girlfriends," R. 408, had been involved in a work experience program assignment at the Red Cross, R. 409, and recommended that she be evaluated for chemical dependency and continue therapy, R. 412. Notes from a July 21, 2015, psychiatric medication review by John Rushforth, NP, at Genesee Mental Health show that Plaintiff started formal chemical dependency treatment, was in PROS[5] treatment at Rochester Rehabilitation and enjoyed groups. R. 511. Ms. Tackaberry completed a mental status examination on September 25, 2015, and wrote that she was cooperative, made good eye contact, exhibited appropriate behavior despite restlessness, her speech was appropriate, her thought process logical, her thought content obsessive, and she had an appropriate affect with anxious mood, with her judgment a 3 on a scale of 1 to 5, and her short and long term memory was intact. R. 518.

---

[5] Personalized Recovery Oriented Services.

*Yu-Ying Lin, PH.D.*

The ALJ considered consultative examiner Dr. Lin's November 2013 examination. R. 165–66, 400–404. Dr. Lin determined that Plaintiff could follow, understand, and perform simple tasks but was not able to perform complex tasks. R. 162, 403. The ALJ discounted Dr. Lin's opinion that Plaintiff had "marked limitations" in differing areas of functioning, such as maintaining attention and concentration; maintaining a regular schedule; making appropriate decisions; appropriately dealing with stress; and relating adequately to others. R. 403. The ALJ stated that these marked limitations did not coincide with the moderate restrictions expressed by Plaintiff's treating providers, such as Ms. Tackaberry who stated that Plaintiff had "moderate limitations" at most. R. 165. In 20 C.F.R. § 416.927(c)(1)–(6), the Commissioner states that frequency of examination and the length, nature and extent of the treatment relationship are all prominent and necessary factors that must be examined when weighing medical opinions.

Plaintiff argues that the ALJ "substituted his own judgment for the judgment of a trained medical professional who with these credentials and experience, believed that Plaintiff was severely limited in her ability to perform work related activities." Pl.'s Mem. of Law at 28–29.

Plaintiff's observable conditions of impaired memory and attention during the examination that Dr. Lin conducted, R. 402–03, showed improvement after November 2013. A psychiatric medication review on October 8, 2014, by John Rushforth, MS, RN, NPP, at Genesee Mental Health Center, noted that although she was still bothered by anxiety, Plaintiff's anxiety around crowds was much less. R 487, 489. An April 16, 2015, evaluation

noted Plaintiff stated that her voices had decreased significantly. R 506. A May 1, 2015, assessment noted that Plaintiff appeared "[a]lert and oriented x3 with fair attention span and concentration. Speech is reasonably articulate and clear and reasonably expansive. Mood is subacute depression and anxiety." R 515. Ms. Tackaberry's December 23, 2013, evaluation noted that Plaintiff's insight was a 4 on a scale of 1 (bad) to 5 (good), that she had a logical thought process, with obsessive thought content, no hallucinations, appropriate affect, depressed mood, and intact short and long term memory. R. 457. The Court concludes that the ALJ properly decided that Dr. Lin's opinion was contradicted by other mental-status examinations in the Record. R. 166.

### *Nisha Gupta, M.D. & Aharon Wolf, M.D.*

Nisha Gupta, M.D., a board-eligible internal medicine resident, treated Plaintiff from April 2, 2013 through January 29, 2014. R. 542, 665. He completed a Monroe County Department of Human Services Physical Assessment for Determination of Employability on November 19, 2013. R. 427–30. Dr. Gupta concluded that Plaintiff could work up to forty hours per week with reasonable accommodations. *Id*. He added that she should not be put into stressful environments and should avoid cold temperatures. R. 428. He indicated he found no limitations in walking, standing, sitting, pushing, pulling, bending, seeing, hearing, speaking, lifting and carrying for more than four hours. R. 430. Aharon Wolf, M.D., diagnosed Plaintiff with Raynaud's phenomenon, chronic headaches and right eye blindness. The ALJ gave significant weight to Dr. Wolf's opinion "because it is generally consistent with his examination findings and overall medical evidence of record." R. 165.

Plaintiff argues that the ALJ was inconsistent in his assessment of consultative examiners, especially regarding Dr. Lin's and Dr. Wolf's opinions. However, the ALJ gave more weight to Dr. Wolf's findings because they were consistent with Dr. Gupta's records, whereas Dr. Lin's opinions were inconsistent with the treating source's notes. R. 165–66, 427–28. The Court is unpersuaded that the ALJ treated the consultative examiners' opinions inconsistently.

### *Rachel Karmally, MD*

The ALJ considered the opinion of Rachel Karmally, M.D., following a February 19, 2014, examination. Dr. Karmally's opinion was that Plaintiff could work up to 40 hours per week in a low-stress position. R. 166, 433.[6]

Plaintiff argues that there is no reference to a visit from Jonina Brown to Dr. Karmally because there is no mention of the visit at Plaintiff's meetings with Jessica Tackaberry prior and after the meeting with Dr. Karmally. Pl.'s Mem. of Law 27. The Record shows, however, that Dr. Karmally saw Plaintiff on February 19, 2014, which is the same day she authored her opinion. R. 614–16. Lastly, Dr. Karmally's opinion of Plaintiff was consistent with Dr. Gupta's. R. 427–30.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and upholds the Commissioner's motion for judgment on the pleadings.

---

[6] When Plaintiff's counsel submitted this opinion, he indicated that it was from Rachel Kannalty, a licensed clinical social worker. R. 431. In his decision, the ALJ evidently relied upon counsel's description of Dr. Karmally's title. R. 166. However, the Record shows in several places that Rachel Karmally is a medical doctor. R. 72, 81, 90, 99, 110, 120, 129, 139, 524, 525, 617, and many other pages.

ECF No. 16. Defendant's motion for judgment on the pleadings is denied. ECF No. 11. The Commissioner's decision is verified pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk is directed to close this case.

So Ordered.

Dated: June 11, 2019
Rochester, New York

ENTER:

<u>/s/ Charles J. Siragusa</u>
CHARLES J. SIRAGUSA
United States District Judge